IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JENNIFER KRANSKY, | CV 23-116-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

## I.    Background

This case is the second suit by Plaintiff Jennifer Kransky ("Kransky") against Defendant The United States of America ("the United States") related to allegations of abuse by her while she was the Nurse Manager at the Department of Veterans Affairs Community Living Center in Miles City, Montana.  In the first case, *Kransky v. United States Department of Veterans Affairs*, CV 22-138-BLG ("*Kransky I*"), Kransky sued the U.S. Department of Veterans Affairs ("VA") and various officials in the VA in their individual and official capacities in this Court for allegedly violating her due process rights under the Montana and federal constitutions, and for negligence, defamation, negligent and intentional infliction of emotional distress, and wrongful discharge under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.  Amended Compl. (Second) ¶¶ 44, 50, *Kransky I*, CV 22-138-BLG-

1

SPW (D. Mont. March 24, 2023) (hereinafter, *Kransky I*, Compl.).[1]  On September 11, 2023, the Court dismissed the case on the grounds that the United States could not be sued for violating Kransky's state constitutional rights and that the Veterans' Benefits Act ("VBA") precluded her federal constitutional, negligence, and wrongful discharge claims.  *Kransky I*, CV 22-138-BLG, 2023 WL 5915794 (D. Mont. Sept. 11, 2023).  Because it did not have jurisdiction to hear her federal claims, the Court held it did not have supplemental jurisdiction to consider the emotional distress and defamation claims.  *Id.*

On September 13, 2023, Kransky sued the same officials in their individual capacities in the Thirteenth Judicial District Court in Yellowstone County, Montana. (Doc. 1-1).  Those defendants removed the case to this Court.  (Doc. 1).  Kransky filed a motion for remand on the grounds that she was suing the defendants in their individual capacities, and the statute under which the defendants removed the case, 28 U.S.C. § 1442(a), only granted the Court jurisdiction over actions taken in federal employees' official capacities.  (Doc. 2).  The U.S. Attorney for the District of Montana certified that the individual defendants were acting within their scope of their employment, so the Court granted the United States' motion to substitute the United States as the sole defendant.  (Doc. 10).  Kransky filed a reply agreeing the

---

[1] The Court takes judicial notice of the pleadings and court orders in *Kransky I*. *See* Fed. R. Evid. 201(b) (allowing the Court to take judicial notice on its own of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

motion to remand was no longer necessary in light of the certification and amended her complaint. (Doc. 16 at 2).

In her amended complaint, Kransky sued under the FTCA for negligent and intentional infliction of emotional distress, malicious prosecution, defamation, negligence, retaliation, and abuse of process. (Doc. 11). The United States then moved to dismiss the amended complaint. (Doc. 18). That motion primarily concerns whether the differences between Kransky's claims in *Kransky I and Kransky II* are distinct enough to overcome the hurdles of claim and issue preclusion.[2]

For the following reasons, the Court grants the Government's Motion to Dismiss on the grounds that her malicious prosecution, negligence, retaliation, and abuse of process claims are barred by claim preclusion, and that the Court lacks subject matter jurisdiction to consider her defamation and emotional distress claims under the FTCA. The Court denies Kransky's Motion to Remand and the United States' First Motion to Dismiss as moot.

//

---

[2] The parties use the term res judicata to refer to claim preclusion. However, res judicata is often used to refer to both issue and claim preclusion. *See* 18 Edward H. Cooper, *Federal Practice and Procedure* § 4402 (3d ed. 2023) ("Although the time has not yet come when courts can be forced into a single vocabulary, substantial progress has been made toward a convention that the broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'"). For clarity, the Court will use the term claim preclusion instead of res judicata.

## II.   Legal Standard

The Government moves for dismissal of Kransky's amended complaint under Rule 12(b)(1), which challenges an action for lack of subject matter jurisdiction, and Rule 12(b)(6), which seeks dismissal for failure to state a claim.

### A.   *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

On a Rule 12(b)(1) motion, the party seeking to invoke the Court's jurisdiction has the burden to establish it. *Scott v. Breeland*, 792 F.2d 925, 926 (9th Cir. 1986). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (internal citation omitted).

### B.   *Motion to Dismiss for Failure to State a Claim*

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading.  Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion, the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the pleading alleges enough facts to draw a reasonable inference that the accused is

liable. *Id.* Though the pleading does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, the Court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

As a rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record" including other state or federal court proceedings. *Id.* at 688–89.

## III.   Discussion

The United States submits four bases for dismissal: Kransky's claims are barred by both claim and issue preclusion, the Court lacks subject matter jurisdiction to hear the defamation claim because the FTCA does not waive sovereign immunity, and the Court lacks subject matter jurisdiction to hear all the claims because they are precluded by the VBA. (Doc. 19). The Court finds claim preclusion bars Kransky's malicious prosecution, negligence, retaliation, and abuse of process claims, and that

the Court lacks subject matter jurisdiction to consider her defamation and emotional distress claims because sovereign immunity is not waived under the FTCA.

### A.    Claim Preclusion

#### 1.    Applicable Law

As an initial matter, the Court must decide whether it applies state or federal law in assessing if claim preclusion applies.  Kransky asserts state law applies because she initially pled state tort claims in a state court.  (Doc. 22 at 11 n.1).  The Government contends federal law applies because "when a federal court evaluates the preclusive effect of a federal court judgment, it is required to apply federal claim preclusion rules."  (Doc. 25 at 7 (citing *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1231 (D. Or. 2013)).

The Government is correct that federal law applies but not exactly for the reasons the Government stated.  To determine the applicable law, the Court must consider both the court that issued the judgment and what type of jurisdiction the court was exercising when it rendered judgment.  If the Court is evaluating the preclusive effect of a judgment made by a federal court sitting in diversity, then the res judicata laws of the state in which the Court sits apply.  *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  If the Court is evaluating the preclusive effect of a judgment rendered by a federal court exercising federal question jurisdiction, then federal law governs.  *Limbach v. Hooven & Allison Co.*,

466 U.S. 353, 361–62 (1984). Here, the Court decided *Kransky I* as a federal question, since the FTCA and VBA governed. Thus, federal law applies.

In federal court, when claim preclusion is raised on a motion to dismiss, Rule 12(b)(6) is the proper vehicle to challenge the complaint. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Save the Bull Trout v. Skipwith*, CV 19-184-M, 2020 WL 2213557, at *2 (D. Mont. May 6, 2020). Therefore, the Court will evaluate the claim preclusion arguments under Rule 12(b)(6).

### 2.   Elements of Claim Preclusion

Claim preclusion "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). *See also Anima v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1154 (D. Haw. 2018) ("[C]laim preclusion bars relitigation not only of all grounds of recovery that were actually asserted, but also those that could have been asserted."). Thus, "[i]t is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather the relevant inquiry is whether they could have been brought." *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998).

Claim preclusion applies when there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016). "The party asserting a claim

preclusion argument 'must carry the burden of establishing all necessary elements.'"

*Id.* The parties here only dispute the first and second elements.

### a.  Identity of Claims

The Ninth Circuit employs four factors to determine if an identity of claims

exists:

> (1) whether rights or interests established in the prior judgment would
> be destroyed or impaired by prosecution of the second action;
> (2) whether substantially the same evidence is presented in the two
> actions;
> (3) whether the two suits involve infringement of the same right; and
> (4) whether the two suits arise out of the same transactional nucleus of
> facts.

*Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017) (quoting *Harris*

*v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)).  "These criteria are not

applied 'mechanistically.'"  *Id.* (quoting *Garity*, 828 F.3d at 855).  The fourth factor

is the most important.  *Id.*

With respect to the fourth factor, "[t]he inquiry about the 'same transactional

nucleus of facts' is the same inquiry as whether the claim could have been brought

in the previous action."  *Id.* (quoting *United States v. Liquidators of European Fed.*

*Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011)).  This is because if the harm arose

at the time of the first action, then there was no reason why the plaintiff could not

have brought the claim in the first action or amended the complaint to add the claim.

*Id.*  However, if the harm arose from different facts at a different time, then the

plaintiff could not have brought the claim in the first action and there is no identity of claims. *Id.* Thus, "[w]hether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* (quoting *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012)). A plaintiff need not bring every possible claim in the first action. *Turtle Island*, 672 F.3d at 918. "But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Id.*

The United States first argues that the claims in *Kransky I* and *II* arise out of the same transaction nucleus of facts because both "are predicated on the events leading up to and following Plaintiff's discharge from the VA." (Doc. 19 at 19). It further notes that most of the allegations in the respective complaints are the same or substantially similar, and those allegations that are new only add detail to allegations already made. (*Id.* at 20). The United States next argues that substantially the same evidence would be presented in the two actions because of the similarity of the complaints, and that the two suits both involve the infringement of the same right—Kransky's loss of her job and the related benefits. (*Id.*). Last, the United States notes that the Court already decided that the VBA precluded Kransky from pursuing her tort claims, and allowing Kransky to repurpose her

9

previously-rejected claims would be inconsistent, inefficient, and require "the United States to defend against rights already adjudicated." (*Id.*).

In response, Kransky maintains the cases are different because *Kransky II* involves events occurring after Kransky's removal. (Doc. 22 at 20). Kransky also argues that the facts that form the basis for the claims in *Kransky II* could not have been brought in *Kransky I* because some of the events had not yet occurred, including the Montana Department of Labor's dismissal of the abuse allegations against Kranksy, and because the defendant delayed in producing key pieces of discovery. (*Id.* at 20–21).

On reply, the United States reiterates that *Kransky I* concerned events leading up to *and* following Kransky's termination, and that Kransky was aware of the core events she alleges had not accrued by *Kransky I*, even if she did not know of some of the specifics. (Doc. 25 at 9). The United States emphasizes that both cases "necessarily involve an inquiry into the *accuracy* of the VA's conclusions about Kransky," which would require identical discovery as in *Kransky I*. (*Id.* at 9–10) (emphasis in original).

The Court finds that *Kransky I* and *Kransky II* have an identity of claims because the claims in both are based on the same factual predicate: Kransky's termination and the events leading up to and after her termination. More specifically, both concern the conduct of VA investigators during their investigations and in

reporting their findings to the Montana Nursing Board and Department of Labor. In both complaints, Kransky first details how VA Officer Colin Norris interviewed persons who did not have personal knowledge of the abuse allegations, therefore rendering his report "incomplete and erroneous." *Kransky I*, Compl. ¶¶ 44, 50; (Doc. 11 ¶¶ 25–28, 37). The then-Director of the Montana VA, Dr. Judy Hayman, in turn relied on that "incomplete and erroneous investigation" to prosecute Kransky. *Kransky I*, Compl. ¶ 50; (Doc. 11 ¶ 37). Kransky next describes in each complaint the deficiencies of the VA's Administrative Investigative Board's investigation, which Dr. Hayman also relied on to terminate Kransky. *Kransky I*, Compl. ¶¶ 58–63; (Doc. 11 ¶¶ 44–52). Kransky then explains Dr. Hayman's final removal decision, which described Kransky as abusing veterans, failing to treat other members of the patient care team with the proper respect and professionalism, and generally failing to fulfill her job responsibilities. *Kransky I*, Compl. ¶¶ 74–75; (Doc. 11 ¶¶ 70–71). Last, Kransky complains of the VA reporting the abuse allegations to the Montana Department of Labor and the Montana Nursing Board, despite the lack of substantiated evidence of the abuse. *Kransky I*, Compl. ¶¶ 115–116; (Doc. 11 ¶¶ 80–98). As such, both complaints base their claims on the events that occurred before and after her termination.

That Kransky asserted different causes of action is immaterial because those claims have simply repackaged Kransky's prior attack on the circumstances

surrounding her termination. *See Anima*, 329 F. Supp. 3d at 1156 (finding that claim preclusion barred "[s]everal newly label or reformulated claims that have simply repackaged [the plaintiff's] prior attack....").  For instance, *Kransky I*'s wrongful discharge claim asserted that the VA did not have good cause to terminate her.  Her recitation of the facts of the case indicate she believed good cause did not exist because the relevant investigations found no wrongdoing, and those investigations that did were incomplete and erroneous.  In *Kransky II*, the claims for negligence and abuse of process allege that the investigations used to prosecute Kransky presented false evidence and hid exculpatory evidence.  Though not mirror images of one another, these claims in *Kransky I* and *II* are based on the legitimacy and accuracy of the investigations that led to her termination.

The Court also recognizes the amended complaint in *Kransky II* contains new facts not described in *Kransky I*.  Most of the new facts are from a report by the Office of Inspector General ("OIG") issued January 26, 2023, which found that the VA clinic in Helena where the veteran Kransky alleged abused was located failed to provide routine medical care to the veteran. (Doc. 11 ¶¶ 60–65).  Kransky apparently requested but did not have access to the OIG report when she filed the operative complaint in *Kransky I* on March 24, 2023.  *Kransky I*, Compl. ¶¶ 53–54.  Kransky also cites to three news articles.  The first, published April 21, 2022, described the closure of the Miles City facility where Kransky worked due to "concerns for patient

safety," which Kransky implies meant concerns stemming from the allegations of abuse. (Doc. 11 ¶ 54). The other two, published October 3 and November 6, 2023, describe the firing of Dr. Hayman and the persistent problems with the Montana VA despite Dr. Hayman's firing. (*Id.* ¶¶ 74–76). The remaining new facts add additional details about the VA investigations into the abuse allegations. (*E.g.,* Doc. 11 ¶¶ 26–28, 30–33, 40–43, 46).

These new facts do not destroy the identity of claims because they exist within the same transactional nucleus of fact as those claims that were raised or could have been raised in *Kransky I* and thus only serve to bolster claims that were available in *Kransky I*. *See Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1024 (9th Cir. 2019) (discussing *Turtle Island*, 673 F.3d at 918–19) ("We held in *Turtle Island* that claim preclusion applied—despite the plaintiff citing evidence in a successive suit that was unavailable in the prior suit—because that evidence was merely an 'example' used to bolster claims that the plaintiff raised in the first action."). First, the OIG investigation was ordered in response to the abuse allegations. Second, the 2022 news article reported on issues stemming from the abuse allegations. Third, the 2023 articles describe what else was going on around the time Kransky was fired but do not speak to the truth of the allegations against Kransky. Last, the additional details about the VA investigations only add color to events previously described.

Of course, if the evidence Kransky cites accrued after the filing of the operative complaint in *Kransky I*, the claim is not barred "even if it arises out of a continuing course of conduct that provided the basis for the earlier claim." *Id.* (quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)). *See also Howard*, 871 F.3d at 1040 (adopting "a bright-line rule which asks only whether a claim could have been brought at the time the operative complaint in the prior suit was filed is appropriate."). But that is not the case here. Kransky's claims center on the conduct of investigators during and after their investigations, all of which ended before (and were referenced in) the *Kransky I* complaint.

As to Kransky's argument that the events at issue in *Kransky II* had not yet accrued because the Department of Labor dismissed the abuse allegations after *Kransky I*, the Court does find this changes the time of accrual because Kransky's claims concern the investigators reporting her to the Department of Labor. The fact that the Department of Labor dismissed the abuse allegations serves only as additional evidence to rebut the veracity of the abuse allegations.

Similarly, as to Kransky's argument that the United States delayed in producing key pieces of discovery, the Court does not find the at-issue evidence changes the accrual calculus. Rather, that evidence serves as "an 'example' used to bolster claims the plaintiff raised in the first action." *Media Rights Techs.*, 922 F.3d at 1024.

14

As to the other identity factors, the evidence that would be presented for both claims is likely the same, namely any records from during and as a result of the investigation. Additionally, both cases involve the loss of Kransky's job and the harm to her reputation. Last, allowing Kransky's new FTCA claims would impair the interests established by the Court's declaration in *Kransky I* that her previous FTCA claims were barred by the VBA.

Accordingly, *Kransky I* and *Kransky II* have an identity of claims.

### b. Final Judgment on the Merits

The Court next determines it issued a final judgment on the merits on the claims in *Kransky I*. The United States asserts that *Kransky I* was a final judgment on the merits because the Court dismissed most of the claims with prejudice. (Doc. 19 at 21). The United States acknowledges that such dismissal was pursuant to Rule 12(b)(1), which usually is not considered a judgment on the merits, but argues that 12(b)(1) dismissals serve as "'on the merits' dismissals for the matter already litigated." (*Id.* (citing 18 Edward H. Cooper, *Federal Practice and Procedure*, § 4435 (3d ed. 2023); *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 469 (5th Cir. 2013))).

Kransky contends that final judgment has not been issued on the claims in *Kransky II* because those claims were either not raised in *Kransky I*, dismissed without prejudice, or dismissed on a jurisdictional basis. (Doc. 22 at 13, 19).

Additionally, *Kransky I*'s judgment was not on the merits because her claims in *Kransky II* do not relate to Kransky's termination or the events leading up to it, as those claims in *Kransky I* did. (*Id.*).

The Court concludes it issued a final judgment on the merits in *Kransky I* for the purposes of *Kransky II*'s malicious prosecution, negligence, retaliation, and abuse of process claims. As an initial matter, the Court has discovered through its research in this case that the United States erroneously moved to dismiss and the Court erroneously dismissed the declaratory judgment, federal due process, negligence, and wrongful discharge claims in *Kransky I* under Rule 12(b)(1). (*See* Doc. 32 at 12; Doc. 40 at 9). Under *Stewart v. U.S. Bancorp*, whether a federal statute preempts a plaintiff's claim is a question of law and fact that should be made under Rule 12(b)(6), not Rule 12(b)(1). 297 F.3d 953, 957 (9th Cir. 2002). Neither party raised this issue with the Court in *Kransky I*. This error does not impact the correctness of the Court's conclusion in *Kransky I* since the Court's application of the substantive law of preemption would not change if it applied Rule 12(b)(6).

Putting aside the labels attached to the motion and order in *Kransky I* and focusing on the substance of the Court's preemption decision, the Court finds that its decision was on the merits because whether the federal preemption defense applies is a decision on the merits of the pleadings. *Id.* ("A district court's analysis of whether the complaint is federally preempted is a question of law and fact; it is a

16

decision on the merits of the pleadings."). Thus, the Court's decision that the VBA precluded the declaratory relief, violation of due process, negligence, and wrongful discharge claims in *Kransky I* was a final decision on the merits. Because there is an identity between those claims in *Kransky I* and the claims for negligence, malicious prosecution, abuse of process, and retaliation claims here, there is a final judgment on the merits as to these claims in *Kransky II*.

As to the defamation and emotional distress claims, the parties dispute whether there was a final judgment on the merits because the Court dismissed them in *Kransky I* for lack of jurisdiction and without prejudice. The United States asserts that the claims' dismissal without prejudice was incorrect because the Court should have exercised original, not supplemental, jurisdiction over them under the FTCA. (Doc. 19 at 22). Thus, according to the United States, the Court's holding that the VBA precluded the FTCA claims applies to the defamation and emotional distress claims, and the Court's order effectively acted as a final judgment on the merits. (*Id.*). The Court notes that the United States did not raise this argument in response to Kransky's contention in *Kransky I* that the Court should exercise supplemental jurisdiction over these counts.

Kransky argues that because dismissal was without prejudice, there was not final judgment on the merits. (Doc. 22 at 13, 19).

17

The Court agrees with Kransky that it did not issue a final judgment on the merits on her defamation and emotional distress claims in *Kransky I* because they were dismissed without prejudice. *See Dauven v. U.S. Bancorp*, 390 F. Supp. 3d. 1262, 1279 (D. Or. 2019) (citing *Stewart*, 297 F.3d at 956) (holding that dismissal of a claim without prejudice is not a final judgment on the merits).   Whether the Court should have exercised original jurisdiction over the defamation and emotional distress claims and dismissed the claims with prejudice is not relevant because a decision's preclusive effect—or lack thereof—stands even if the previous judgment was incorrect. *See Love v. Villacana*, 73 F.4th 751, 754 (9th Cir. 2023) ("A final judgment is afforded preclusive effect even if erroneous.").

Accordingly, there was a final judgment on the merits for the purposes of the malicious prosecution, negligence, retaliation, and abuse of process claims, but not for the defamation and emotional distress claims.

### c.    Privity of Parties

The parties do not dispute that there is privity between the parties here.  Since the plaintiff (Kransky) and the defendant (the United States) are the same, the Court finds such privity exists.

### d.    Conclusion

The United States met its burden to show that the elements of claim preclusion are met for Kransky's malicious prosecution, negligence, retaliation, and abuse of

process claims. Accordingly, the Court dismisses these claims as barred by claim preclusion.

The United States did not meet its burden to show that the Court's dismissal of the defamation and emotional distress claims was a final adjudication on the merits. Accordingly, claim preclusion does not bar those claims.

B.     *Sovereign Immunity Waiver in FTCA*

The United States alternatively argues that Kransky's defamation claim must be raised under the FTCA, and that it must be dismissed because the FTCA does not waive sovereign immunity for defamation. (Doc. 19 at 24). The United States notes that it raised this point in *Kransky I*. (*Id.*). Kransky does not address this argument.

The Court agrees with the United States that it does not have subject matter jurisdiction to hear Kransky's defamation claim here because defamation against the United States must be raised under the FTCA, and the FTCA does not waive sovereign immunity for defamation. 28 U.S.C. § 2680(h). The United States and its agencies are immune from suit absent a specific waiver of sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). When the United States does not waive sovereign immunity, the Court lacks jurisdiction to hear the claim. *Id.* The FTCA functions as a limited waiver of sovereign immunity by the United States and its agencies because, pursuant to the FTCA, the United States and its agencies consent to be sued for certain tort claims. *Molzof v. United States*, 502 U.S. 301, 305 (1992).

19

*See also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances").

However, the FTCA contains a variety of exceptions to the sovereign immunity waiver.  28 U.S.C. § 2680.  As relevant here, the FTCA does not waive sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Accordingly, Kransky's claim for defamation is excluded from the FTCA's waiver of sovereign immunity.  *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003) ("The [FTCA] does not permit suits against the United States for defamation") (internal citations omitted); *McLachlan v. Bell*, 261 F.3d 908, 912 (9th Cir. 2001) (explaining that claims for defamation fall within the 28 U.S.C. § 2680(h) exclusion).[3]

As for Kransky's intentional and negligent infliction of emotional distress claims, the Court finds both claims fall under the intentional torts exception to the

---

[3] Defamation is comprised of the torts of libel and slander.  53 Paul M. Coltoff, et al., Corpus Juris Secundum, *Libel and slander as construed by the courts* § 1 (2023).

Additionally, dismissal of *Kransky II*'s claims for malicious prosecution and abuse of process would be proper under the FTCA since both fall under the intentional torts exception. 28 U.S.C. § 2680(h).  Whether the retaliation claim would fall under the intentional torts or another exception to the FTCA's sovereign immunity waiver is less clear and not briefed.

FTCA sovereign immunity waiver because they arise out of torts enumerated in the § 2680(h) exclusion.  In determining whether a claim 'arises out of' one of the enumerated torts, the Ninth Circuit requires the Court to "look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)." *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996).  *See also Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990) ("[W]e look beyond [the complaint's] characterization [of the cause of action] to the conduct on which the claim is based."); *Thomas–Lazear v. FB.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) ("This circuit looks beyond the labels used to determine whether a proposed claim is barred [by the intentional torts exception]").  The Court asks whether conduct that constitutes an enumerated tort is "essential" to a plaintiff's claim.  *See, e.g. Mt. Homes*, 912 F.2d at 356 (holding that plaintiff's claim alleged conduct that falls within the excepted tort of misrepresentation because "the essential element of Mt. Homes' claim is that [the government] gave it inaccurate information"); *Thomas–Lazear*, 851 F.2d at 1207 ("Put another way, the Government's actions that constitute a claim for slander are essential to Thomas–Lazear's claim for negligent infliction of emotional distress.").  If the conduct that constitutes an enumerated tort is essential to a plaintiff's claim, the claim falls within the intentional torts exception to the

FTCA, the FTCA does not waive sovereign immunity, and the claims must be dismissed for lack of subject matter jurisdiction.

Kransky's emotional distress claims target the United States' "acts and omissions concerning [Kransky that] were extreme and outrageous, shocked the conscience, and breached the duty of care they owed to" Kransky. (Doc. 11 at 19). Based on the body of the complaint, Kransky seems to assert that her emotional distress was caused by the actions of investigators. Those actions specifically involve the statements the investigators made to higher-ups in the VA, Montana Department of Labor, and Board of Nursing about the culpability of Kransky in the alleged abuse of the veterans that were inaccurate and that the investigators supposedly knew were inaccurate.  Such actions are properly characterized as defamation and/or misrepresentation, since the investigators effectively disseminated information they knew was false or unsubstantiated about Kransky. *Cf. Mt. Homes*, 912 F.2d at 356 (holding that plaintiff's claim alleged conduct that falls within the excepted tort of misrepresentation because "the essential element of Mt. Homes' claim is that [the government] gave it inaccurate information"); *Thomas–Lazear*, 851 F.2d at 1207 ("Put another way, the Government's actions that constitute a claim for slander are essential to Thomas–Lazear's claim for negligent infliction of emotional distress.").

Accordingly, Kransky's emotional distress claims fall within the intentional torts exception to the FTCA. The United States has not waived sovereign immunity for these claims, and the Court lacks subject matter jurisdiction to hear them. Dismissal of them is proper. The Court acknowledges that this should have been the disposition of the defamation and emotional distress claims in *Kransky I*, though admittedly the briefing was not particularly thorough on this issue.

## IV.   Conclusion

Because the United States demonstrated that the three elements of claim preclusion are satisfied here for the claims for negligence, malicious prosecution, abuse of process, and retaliation in *Kransky II*, the Court concludes they are barred by claim preclusion and must be dismissed. Kransky's claims for defamation and emotional distress must be dismissed because the United States has not waived sovereign immunity and the Court lacks jurisdiction to consider them.

Accordingly, Defendant The United States' Motion to Dismiss (Doc. 18) is GRANTED. Kransky's Motion for Remand (Doc. 2) and The United States First Motion to Dismiss (Doc. 6) are DENIED as moot. The Clerk of Court is directed to enter judgment and close the case.

DATED this _3rd_ day of April, 2024.

SUSAN P. WATTERS
United States District Judge

23